## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARJORIE FUDALI,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 03-1460 (JMF)** |
| ) | |
| **PIVOTAL CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### MEMORANDUM OPINION

Plaintiff Fudali is a former employee of defendant Pivotal who brought suit alleging that she was not paid an appropriate amount of commission based on a contract she negotiated between Pivotal and a third-party called Syngenta.  A jury trial was held over the course of five days in October 2007.  The jury rendered a verdict in favor of the plaintiff and found that (1) Pivotal agreed to pay plaintiff under a compensation plan known as the "Channel Sale, Sales Executive & Senior Sales Executive Plan" ("Senior Sales Plan"); (2) the agreement between Pivotal and Syngenta ("Syngenta agreement") had extended payment terms; and (3) plaintiff's commission was not limited to licenses and the first year of maintenance.

Pivotal moved at the close of the plaintiff's case and again at the close of the evidence for judgment as a matter of law on those three issues.  Pivotal argued that there was insufficient evidence in the record for the jury to find in plaintiff's favor on the first issue: whether Pivotal and Fudali agreed that her commissions would be calculated in accordance with the Senior Sales Plan rather than the Global Sales Plan.  Pivotal also argued that there was insufficient evidence to support the plaintiff's contention that the Syngenta agreement had extended payment terms.

Finally, Pivotal argued that the contract clearly limited plaintiff's commissionable revenue to licenses and the first year of maintenance and thus no parol evidence should have been admitted to explain the meaning of the clause. I denied those motions and decided to submit the case to the jury. Defendant now renews its arguments.

It is imperative to understand that several of the arguments that Pivotal made at trial had been made earlier in a motion for summary judgment that I denied that led to the trial. My rulings at trial were therefore consistent with my early rulings to which I must now refer so that I can explain my reasoning. Unfortunately, there is an impediment to my discussing those opinions because they were filed under seal and have not yet been made part of the public record. I must begin, therefore, with an explanation of why I am unsealing them, except for certain information. I can then turn to how I ruled since the motions made at trial renewed the arguments that had been made when Pivotal moved for summary judgment.

## I.   The Earlier Opinions Should Be Unsealed.

When discovery commenced in this case, the parties entered into a Stipulation and Order for the Protection of Confidential Information that was approved by the Court. The Order provided (*inter alia*) that confidential information that was filed with the Court was to be filed under seal. Order, December 11, 2003 [#16-1] ¶ 10. Thus, the filings made in this case that referenced confidential information or had confidential information attached as exhibits were filed under seal. The Court then placed under seal its Opinions and Orders, including the Memorandum Opinion of October 15, 2007 to which I must make reference to resolve the defendant's Motion for New Trial. Since the trial has been completed, I must now confront the question of whether any of my Opinions and Orders should remain sealed. I have concluded that

2

they need not remain under seal but can be placed on the public docket with certain information expurgated. Complete copies will remain filed under seal.

The Court must begin with the heavy presumption in favor of public access to court records, particularly those that explain and contain a judge's reasoning for her decisions. <u>See Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597-98 (1978); <u>Equal Employment Opportunity Comm. v. Nat'l Children's Center</u>, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (presumption in favor of public access to judicial proceedings is especially strong as to court's decrees, judgments and orders, the "quintessential business of the public's institutions"); <u>In re Application of Nat'l Broad. Co.</u>, 653 F.2d 609, 612 (D.C. Cir. 1981) (existence of common law right to inspect and copy judicial records is indisputable and serves interest of ensuring integrity of judicial proceedings); <u>In re Vitamins Antitrust Litig.</u>, 357 F. Supp. 2d 50, 52 (D.D.C. 2004) ("[T]he public does not only have an *interest* in what the court decides and why it makes its decisions; it also has the *right* to know that information. Therefore, any orders or opinions I issue will unquestionably be on the public record.").

This right, however, is not absolute and may yield (*inter alia*) to a party or third person's legitimate effort to protect its trade secrets. <u>United States v. Hubbard</u>, 650 F.2d 293, 316 (D.C. Cir. 1981). The clash between public access and the desire for the privacy claimed should be resolved by analyzing the factors identified in that case: (1) the need for public access to the documents at issue; (2) the public use of the documents; (3) the objection made and the party making it; (4) the strength of the generalized property and privacy interests asserted; (5) the possibility of prejudice; and (6) the purposes for which the documents were introduced.

First, while this a private and commercial dispute and there has been no public use of the

documents, there is a justified public interest, previously identified, in the public's learning the

reasons for the Court's decisions.  Second, while the information at issue in now seven years old,

I will take as a given that its disclosure now would harm Pivotal and Syngenta because it

discloses pricing information that might hurt their competitive positions in the marketplace.

Third, I have to note that no effort was made to seal the court room during the trial.  While I

cannot pretend that this case drew a crowd to the court room, that the very issues discussed in my

opinions were testified to and argued about in a public court room cuts in favor of disclosure of

my opinions discussing the same issues.  In re Application of Nat'l Broad. Co., 653 F.2d at 614

(fact that tapes sought to be disclosed were played to jury weighs heavily in favor of disclosure;

trials are public events and what transpires in the court room is public property).

Fortunately, there is a resolution that would serve both the interests of public access and

the maintenance of confidentiality for proprietary information without having to decide whether

the interest in public access trumps the need for secrecy.  I have reviewed my prior opinions and

have determined that they are still comprehensible even if I eliminate from them the numerical

information.  That there was a contract between Syngenta and Pivotal is not a trade secret; only

its terms expressed in pricing information could possibly qualify. Accordingly, I have deleted

from my opinions all the numerical information and will order that, as expurgated, they now be

filed on the public record.

## II.    Analysis.

### A.    Standard for Judgment as a Matter of Law, or a New Trial.

Judgment as a matter of law is appropriate if "a party has been fully heard on an issue

during a jury trial and the court finds that a reasonable jury would not have a legally sufficient

evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  To determine

whether there is sufficient evidence to set aside the jury's verdict, the Court must consider all the

evidence in the record.  Stenograph LLC v. Bossard Assoc., Inc., 144 F.3d 96, 99 (D.C. Cir.

1998).  "In doing so, however, the court must draw all reasonable inferences in favor of the

nonmoving party, and it may not make credibility determinations or weigh the evidence."

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

  Pivotal here first asks me to revisit my earlier conclusion that the two provisions of the

contract at issue in this motion are ambiguous.  I decided at the summary judgment stage that the

provisions were ambiguous, and, having heard no reason to change my mind, I persist in my view

that the provisions are ambiguous.  At the close of the evidence, Pivotal argued again that the

contracts were clear on their face and judgment should be awarded in Pivotal's favor, but also

argued that, even if the contracts are ambiguous, there was insufficient evidence in the record to

support any interpretation of their meaning other than the interpretation advanced by Pivotal,

thereby entitling Pivotal to judgment as a matter of law.  See Fed. R. Civ. P. 50(a).  I disagreed,

and submitted the case to the jury.

  As I have stated, I have already determined that the contracts were ambiguous, and that

the evidence at trial was not so one sided as to require that judgment be entered in Pivotal's

favor.  Thus, all that is left to do in this case is determine whether the jury's actual verdict is

supported by sufficient evidence.

  I begin, however, with an issue not raised at the summary judgment stage.

**B.    Which Compensation Plan Should Plaintiff's Commission Have Been Calculated Under?**

When Pivotal paid Fudali's commission, it did so in accordance with the terms of a commission plan known as the Global Plan.  According to Pivotal, the Global Plan applied to its salespersons, like Fudali, who were not limited by region.  Defendant Pivotal Corporation's Motion for Judgment as a Matter of Law, or in the Alternative for a New Trial With Included Statement of Points and Authorities in Support ("Def. Mem.") [#116, 117] at 5.  Fudali argues that when Pivotal presented her with the Global Plan, she refused to sign it and worked out an alternative arrangement with then Chief Financial Officer Vincent Mifsud.  Plaintiff's Opposition to Defendant Pivotal Corporation's Motion for Judgment as a Matter of Law, or in the Alternative for a New Trial ("Pl. Opp.") [#119] at 5.  The jury found in Fudali's favor and determined that she should have been compensated in accordance with the Channel Sales Agreement.  Pivotal argues that there is insufficient evidence in the record to support the jury's verdict.

Fudali testified[1] that she refused to sign the Global Compensation Plan because she was dissatisfied with the terms.  In further support of that, the only Compensation Plan bearing Fudali's signature is the Channel Sales Agreement.  Also, other Pivotal employees testified that it was Mifsud's practice to enter into unique compensation arrangements with individual employees as an incentive or retention strategy.  Fudali thus presented evidence to establish that

---

[1] The parties to this litigation did not provide the Court with official transcripts to aid in resolving these motions.  To decide this motion, I have relied on my notes and a rough copy of the trial transcript.  I have not included citations to the rough transcript herein because it is what it sounds like, a rough draft, and the pagination likely would not coordinate with the final version.  I assume the parties will order the transcript should they decide to bring these issues before the court of appeals.

(1) Misfud had the authority to alter her compensation plan, (2) Misfud sometimes exercised that authority with other employees, and (3) Misfud agreed to alter her compensation plan in this case.

Pivotal presented competing evidence, an e-mail written by Fudali that references a quota requirement of 3.2 million, which is a figure from the Global Plan, and the deposition of Misfud where he testified that he had no recollection of entering into a special arrangement with Fudali. It is the province of the jury to weigh the competing evidence on this point and determine which side is to be believed.  In this case the jury chose to believe Fudali's account of the events, and as there is sufficient evidence in the record to support that verdict, I will deny Pivotal's request that the verdict be set aside or a new trial be granted.

### C.    Extended Payment Terms.

Pivotal also seeks to set aside the jury's finding that the agreement between Pivotal and Syngenta contained extended payment terms.  The phrase "extended payment terms" is found in the Channel Sales Agreement paragraph 6.2, Plaintiff's Exhibit 4.  The phrase is not defined, however, and despite Pivotal's continuing protestation, I persist in my conclusion, expressed in the Memorandum Opinion denying the motion for summary judgment, that the phrase is ambiguous.  Memorandum Opinion [#89] at 15-17.

At trial, Fudali testified herself that the contract contained extended payment terms and presented the testimony of Jim Warden and Sam Martino, both *Pivotal* executives, who opined that the Syngenta deal contained extended payment terms.  Therefore, she met her obligation to present adequate evidence to convince a reasonable person of the correctness of her interpretation of the ambiguous term.  The jury was free to credit the testimony of Fudali, Warner, and Martin

7

and apparently did so on this issue.  Because there was sufficient evidence to support the verdict,

I will deny Pivotal's motion on this count.

### D.    Maintenance and 12 Months Revenue.

Finally, Pivotal argues that the compensation plan explicitly states that Fudali's

commissions should be calculated based only on licenses and the first year of revenue.  Fudali

argued that the provision: "You will be eligible to receive commission and quota credit on

license and the first 12 months of maintenance revenue recognized by Pivotal . . ." is ambiguous

because it merely states what can be included but does not indicate whether other types of

revenue must be excluded.  See Plaintiff's Exhibit 4 at 2.  Pivotal takes the same stance in

interpreting the section on product quotas: "Items eligible for quota credit include: License

revenue for Pivotal product and 1st year maintenance and support."  Id.  In denying Pivotal's Rule

50 motion, I agreed with Fudali that the provision is susceptible of both interpretations and

permitted the case to go to the jury.

Pivotal argues that I should find that the clauses are clear on their face and ignore the

evidence that Fudali presented at trial concerning the meaning of these provisions of the contract.

It argues that to believe Fudali's interpretation I would need to amend the plain language to

include licenses and "at least" the first year's maintenance.  That may be true, but to credit

Pivotal's interpretation the clause should say license and "only" the first year's maintenance.

The clause does not conclusively speak to the issue of what happens to additional maintenance

revenue, and is susceptible of both interpretations as I originally concluded when I ruled on the

Rule 50 motion.  Nothing in the post-trial briefing has caused me to revisit that conclusion.

Additionally, Fudali presented evidence that the contract is meant to guarantee that the

salesperson be compensated for the first year of maintenance, and most contracts at Pivotal do

not contain more than one year of maintenance.  She testified that it was common practice at

Pivotal to pay commissions on more than the first year of maintenance, and Warden and Martino

testified similarly.  Accordingly, there was sufficient evidence in the record for the jury to

conclude that her interpretation of the ambiguity was the correct one.  The jury was therefore free

to conclude she was entitled to be compensated for the total cost of the Syngenta deal and not

just licenses and the first year of maintenance.  I will deny Pivotal's motion on this point as well.

## II.    Conclusion.

Accordingly, for the reasons discussed herein, I will deny Pivotal's motion for judgment

as a matter of law, or, in the alternative, for a new trial.

An Order accompanies this Memorandum Opinion.


Date: June 5, 2009                                            _____/S/_____
                                                             JOHN M. FACCIOLA
                                                             U.S. MAGISTRATE JUDGE

9