UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARJORIE FUDALI,<br><br>Plaintiff,<br><br>v.<br><br>PIVOTAL CORPORATION,<br><br>Defendant. | Civil Action 03-1460 (JMF) |

MEMORANDUM OPINION

A jury trial in this case began on October 22, 2007, and concluded on October 26, 2007, with a verdict favorable to the plaintiff. The parties dispute the amount of damages that should flow from the jury's verdict, and have submitted briefs in support of their respective positions. See, e.g., Plaintiff's Statement of Damages Calculation ("Calc."); Defendant Pivotal Corporation's Response to Plaintiff Marjorie Fudali's Statement of Damages Calculation ("Opp."); Plaintiff Marjorie Fudali's Response to Defendant Pivotal Corporation's Response to Plaintiff Marjorie Fudali's Statement of Damages Calculation ("Reply"). A hearing was held on May 12, 2008, and the Court now turns to the issues that separate the parties.

I.  **Rule 50**

At the close of the plaintiff's case in chief, and again before this case was submitted to the jury, Pivotal moved for judgment as a matter of law on two issues: (1) whether Pivotal's agreement with Syngenta contained extended payment terms, and (2) whether plaintiff's recovery was limited to commissions based on revenue from licenses and 12 months of maintenance contracts. The Court twice denied defendant's motions so that these issues would

be submitted to the jury for its consideration. The Court noted that defendant was free to move to set aside the verdict should the verdict be unfavorable to its position.

In its reply to plaintiff's damages calculation, defendant seeks to renew its Rule 50 motion. However, this is not an appropriate procedural posture to challenge the jury's verdict. Instead, defendant should renew its motion within 10 days of the entry of judgment, which has not yet occurred. See Fed. R. Civ. P. 50(b). As these issues are not ripe for decision, I will reserve judgment on them until such time as a motion is properly filed.

## II. Contractual Issues

### A. OEM Royalties

The defendant challenges the plaintiff's inclusion of [REDACTED] in OEM royalties in the calculation of commissionable revenue because "Pivotal earned nothing from these amounts." Opp. at 10. Pivotal has described OEM royalties as:

> amounts that Pivotal must pay to other companies who manufacture software that Pivotal uses in implementing its software for customers. These funds thus effectively pass through Pivotal from Pivotal's customers to the OEM, with Pivotal making no money on these royalties.

Pl. Exh. 39[1] at 6; see also Opp. at 2 ("Pivotal was obligated to pay [REDACTED] to third-parties for OEM royalties for other software included in the software Pivotal was selling to Syngenta.").

The plaintiff argues in response that Jim Warden testified that OEM royalties were not ordinarily deducted from commission payments, and that no evidence was offered by the defendant to contradict that testimony. Reply at 5. Documentary evidence was introduced to support defendant's argument, however. First, Paragraph 6.6 of the Incentive Compensation Plan FY2002 states that "commissions on any sale will be calculated net of any OEM Fees

---

[1] All exhibits cited in this Opinion refer to trial exhibits.

2

Pivotal must pay with respect to that sale." Pl. Exh. 4 ¶ 6.6. Second, the "Syngenta Commission Calculation Worksheet" describes in detail the OEM royalties to be deducted from the Syngenta deal. Pl. Exh. 31. In response, the plaintiff points to the Olsen memorandum,[2] entitled "Revenue Recognition on Syngenta Contract," as evidence that the OEM royalties were never paid. Pl. Exh. 40. But the Olsen memo, as the title indicates, focuses on revenue recognition; Paragraph 6.6 of the Incentive Compensation Plan FY2002 indicates that this amount differs from the amount of a sale that is commissionable. Pl. Exh. 4 at ¶ 6.6; see also id. at ¶ 6.2(c) (commission based on "commissionable fees").

To the extent that this question requires a weighing of competing evidence and a finding of fact, the Court notes that the plaintiff did not request in her proposed verdict form that the jury make that determination, Verdict Form [#99], and no objection was raised by her to the final verdict form's silence as to OEM interest. Verdict Form [#102]; Transcript, Oct. 24, 2007; see also Fed. R. Civ. P. 49(a)(3) ("A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury."). Nor did she raise an objection to the jury instructions, which were similarly silent in regard to OEM royalties. Jury Instructions [#104]; see also Fed. R. Civ. P. 51(d) (party cannot assign as error a failure to give an instruction unless that instruction was requested by the party). Because plaintiff did not demand that the issue of OEM royalties be submitted to the jury, she has waived her right to a jury determination on that issue, and the Court is permitted to make a factual finding. Fed. R. Civ. P. 49(a)(3) ("If the party does not demand submission, the court may make a finding on the issue."). Based on the

---

2 Errol Olsen authored a memorandum on April 29, 2002 to "outline the accounting issues and proposed revenue recognition treatment for the Syngenta contract." Pl. Exh. 40.

evidence, I find that OEM royalties in the amount of [REDACTED] were paid by Pivotal and should be excluded in the calculation of the plaintiff's final judgment.

### B. Pre-Existing Maintenance Obligations

Defendant also challenges the plaintiff's inclusion of [REDACTED] in pre-existing maintenance obligations in her damages calculation. Opp. at 11. Defendant notes that the Global Agreement between Pivotal and Syngenta states "the parties acknowledge and agree that the sum of [REDACTED] applies to maintenance and support services for the Existing Syngenta (and Syngenta Entities) Installed and Purchased Software Base for the period to 31/3/04." Pl. Exh. 33 at 32. Plaintiff has not offered any evidence to contradict the Global Agreement's assertion that this portion of the maintenance charges billed to Syngenta were attributable to other previous sales. Instead, plaintiff argues that Pivotal did not deduct this figure from its calculations in the Olsen memorandum, Pl. Exh. 40, or the commission calculation sheet, Pl. Exh. 31, and therefore should not be permitted to deduct them now.

However, the Olsen memorandum specifically discusses the pre-existing maintenance obligation in the section entitled "Revenue Treatment." Pl. Exh. 40 at 2. The memo notes that the "post deployment PCS renewal rate of [REDACTED] includes PCS for pre-2002 licenses worth approximately [REDACTED]." Id. This refers to one half of the [REDACTED] figure included in the contract. Unfortunately for the accuracy of the ensuing calculations, the Olsen memorandum performs subsequent calculations using the estimated figure of [REDACTED] rather than the actual [REDACTED]. The memo deducts [REDACTED] from the [REDACTED] figure to arrive at [REDACTED] as the yearly maintenance obligation that arose out of the deal in question. Id. The memo further explains that only 80.5 percent of licenses were purchased in 2002; 80.5 percent of [REDACTED] equals [REDACTED]. Id. The memo

then states that the total revenue recognized equals [REDACTED] plus [REDACTED] to arrive at the [REDACTED] figure that appears under the "maintenance" section of the recognized revenue table. Id. The commission calculation worksheet does not specifically include or exclude the pre-existing maintenance obligations; some deductions are obviously taken from the maintenance on new licenses, but they are not described in the document. See Pl. Exh. 31.

Like the OEM revenue, plaintiff did not request that this issue be submitted to the jury, and she therefore waived the right to a jury trial on this issue. See Fed. R. Civ. P. 49(a)(3). The contract between Pivotal and Syngenta explicitly says that the payment terms include pre-existing obligations. Further, the Olsen memorandum, contrary to plaintiff's assertion, explains how the revenue Pivotal expects from its contract with Syngenta includes these pre-existing obligations. The plaintiff has presented no evidence to suggest that she is entitled to be paid a commission on a sale that she did not perform. Therefore, the Court will exercise its power under Rule 49(a)(3) to find that Pivotal has demonstrated that the maintenance payments reflected in plaintiff's calculations include [REDACTED] of revenue that is attributable to other sources. That amount must therefore be deducted from the total commissionable amount.

The Olsen memorandum suggests that the amount of [REDACTED] was paid to Syngenta over two years, in two payments of [REDACTED]. See Pl. Exh. 40 at 1 ("Syngenta currently pays approximately [REDACTED] per year for PCS on existing licenses."); Pl. Exh. 33 at 32 (noting that [REDACTED] total applied to maintenance and support through March 31, 2004). Accordingly, the Court determines that the PCS revenue collected in 2002 and 2003, must be reduced by [REDACTED] per year. Thus, working from Exhibit B-2 to Plaintiff's Statement of Damages Calculation, the value in columns (B) and (C) (Commissionable Amounts) for "March and April 2002 Commissionable Total" must be reduced to

[REDACTED]. Similarly, the amount in column B for "January 2003 Revenue" must be reduced to [REDACTED]. The net present value, in May, 2002 dollars, of [REDACTED], calculated at a 20 percent discount rate in accordance with the Incentive Compensation Plan, Pl. Exh. 4 ¶6.2(c), is [REDACTED]. After substituting these numbers for the inflated numbers contained in Exhibit B-2, the total commissionable amount is reduced to [REDACTED]. Based on this sum, plaintiff was entitled to receive a commission in the amount of [REDACTED].

### C.   One-Percent Override

The plaintiff seeks as part of her judgment a one-percent "override" for the entirety of the revenue associated with the Syngenta deal. The relevant contractual language comes from Section 3 of the Commission Plan:

> You will earn an additional 1% override on all business you close in which payment is received simultaneously with contract execution or receipt of purchase order.

Pl. Exh. 4 at ¶ 3 ("Override Clause").

The Global Agreement, the underlying contract governing the Syngenta deal, is dated April 25, 2002; the final signature was affixed on May 20, 2002. Memorandum Opinion, Oct. 15, 2007 [#89] at 3. Pivotal received a payment of [REDACTED] from Syngenta on April 24, 2002, one day prior to the date of the Global Agreement. Id. at 3. Though it was to be "rolled into" the Global Agreement, the payment was submitted in fulfillment of two invoices sent to Syngenta by Pivotal in March 2002. Id. at 3-4. The next two payments were received on June 21, 2002. Id. at 7. It is indisputable, then, that payment was not "received simultaneously with contract execution or receipt of purchase order." Pl. Exh. 4 at ¶ 3.

The plaintiff's arguments are in direct conflict with the plain language of the Override Clause. See Meshel v. Ohev Sholom Talmud Torah, 869 A.2d 343, 361 (D.C. 2005) (court is to

"look first to the actual language of the contract and give that language its plain meaning."). She argues that she should receive the override because Syngenta "made clear" that it "would be paying" pursuant to the Global Agreement, and that the Global Agreement demonstrated that Syngenta "intended to be bound to Pivotal" for the full amount of the deal. Reply at 7. The Override Clause clearly requires simultaneous payment for the override to be awarded, and it is consequently irrelevant what Syngenta "would" do or "intended" to do. Similarly, the plaintiff's argument that the Override Clause should be read to award the override "on all business she closed" is thoroughly unsupportable, as it would require the Court to disregard the latter half of the clause, whereby "payment is received simultaneously with contract execution or receipt of purchase order." Pl. Exh. 4 ¶ 3; see also Air Line Pilots Ass'n Int'l v. Pension Benefit Guar. Corp., 193 F. Supp. 2d 209, 218 n.4 (D.D.C. 2002) (contracts are to be read "so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless or nugatory") (internal quotation omitted). Because payment was not received by Pivotal "simultaneously with contract execution or receipt of purchase order," the judgment will not include a 1% override. Pl. Exh. 4 at § 3.

### D.   Quota Bonuses

Plaintiff argues that she is entitled to be paid $10,000 for her Third and Fourth Quarter Bonuses. Calc. at 5. Defendant does not respond to plaintiff's request. Because defendant does not object to the bonuses, I will take the point as conceded and find that plaintiff is entitled to be compensated in the amount of $10,000 in unpaid quarterly bonuses.

### III. Extracontractual Issues

#### A. Vacation Time and Two Weeks Notice

Plaintiff seeks to recover "unused vacation time in the amount of $3,591 and the balance of two weeks notice in the amount of $628." Calc. at 5. Defendant argues that plaintiff is not entitled to recover these damages because she did not request them in her complaint. Plaintiff responds that her complaint included a provision requesting other compensation, which can be read to include unused vacation and two weeks notice. Plaintiff did not seek to submit this claim to the jury, however.

Defendant points out that plaintiff states in her complaint that "after resigning, Pivotal paid Ms. Fudali her final paycheck and reimbursed her for unused vacation." Complaint [#2] at ¶ 28; Amended Complaint [#24-2] at ¶ 28. Later in the Amended Joint Pretrial Statement [#95] plaintiff sought damages for unpaid vacation and two weeks notice. Id. at 7-8. Thus defendant's assertion that plaintiff waited until her Statement of Damages Calculation to claim these damages is inaccurate. In her Reply, plaintiff claims that the issue of unpaid vacation and salary was discussed at trial, but she does not cite to any trial testimony or exhibits that indicate she is entitled to these amounts. Reply at 13. Instead, she points to testimony that she gave in a pre-trial deposition where she testified that she did not receive these amounts. Id. Plaintiff also claims she provided documentation to the defendant, but she did not present those items as evidence at trial. Id. I appreciate that plaintiff may have presented her case for these items to the defendant in the course of discovery, but she did not present it to the Court in the course of the trial. Instead, the record contains plaintiff's repeated admission that she has already been compensated for unused vacation and salary. E.g., Complaint [#2] at ¶ 28; Amended Complaint [#24-2] at ¶ 28. As plaintiff did not request that this issue be submitted to the jury, and the

8

evidence in the record does not support a finding that she was not paid for her unused vacation and salary, I find, pursuant to Rule 49(a), that plaintiff is not entitled to recover those amounts.

### B.     Attorney's Fees

The plaintiff asks the Court to invoke its "equity jurisdiction" to award her attorney's fees and costs as a consequential damage. Reply at 8. She argues that such an award is appropriate in light of the "willfull[] deni[al]" by the defendant of her rightful commission. Id. (alleging "vexatious conduct" and "bad faith . . . for oppressive reasons"). Defendant, noting that there is no contractual provision or statutory authority for such an award, opposes. Opp. at 13.

"Under the American Rule, 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co., 127 S. Ct. 1199, 1203 (2007) (quoting Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 247 (1975)); see also Roos v. LaPrade, 444 A.2d 950, 951 (D.C. 1982) ("In the absence of statutory or rule authority, attorney's fees generally are not allowed as an element of damages, costs, or otherwise.") The Court may, however, award attorney's fees to the prevailing party "if the conduct of the nonprevailing party is willfully fraudulent, in bad faith, vexatious, wanton, or oppressive." Id.

The facts of this case do not support a diversion from the American Rule. The jury made no finding of bad faith or fraud on the part of the defendant, and the contracts at issue here warranted careful consideration so that the defendant's interpretation of them, even if incorrect, cannot be said to have been made in bad faith. The plaintiff also points to the testimony of Jim Warden, who testified that plaintiff "was spoken of crudely in senior management meetings." Reply at 8. Even if true, however, that testimony cannot alone support fee-shifting here,

especially in the absence of any evidence directly linking that behavior to the defendant's actions in connection with the commission payments. The final judgment will therefore not include attorney's fees or costs.

### C. Pre-Judgment Interest

The plaintiff asks the Court to award her pre-judgment interest, compounded on a monthly basis, from May 30, 2002, the date of the defendant's commission calculation worksheet. Memo at 3-4. The defendant argues that interest should not be awarded for what it believes are delays caused solely by the plaintiff, and that any award of interest should not be compounded.

The parties focus their briefing on the question of *how much* pre-judgment interest should be awarded. The threshold question, however, is whether pre-judgment interest *can* be awarded. The plaintiff incorrectly cites D.C. Code § 15-108[3] as controlling the award of pre-judgment interest in this case. That statute states:

> In an action in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid.

D.C. Code § 15-108. If applicable, § 15-108 would defeat the defendant's attempts to carve out portions of time because pre-judgment interest is mandatory and is calculated "from the time when [the commission] was due and payable." Id. But § 15-108 applies only to "liquidated debt." Id. "A debt is liquidated if at the time it arose, it was an easily ascertainable sum certain." Hartford Accident & Indem. Co. v. District of Columbia, 441 A.2d 969, 974

---

3 All references to the D.C. Code refer to the most recent version available on Westlaw or Lexis.

(D.C.1982) (internal quotation omitted). The debt here, at the time it arose, could hardly be described as "easily ascertainable." Id. The best evidence of this is plaintiff's own inability to ascertain what she was owed. In her first and amended complaints, for example, she only seeks commission on first-year maintenance from the Syngenta deal. See, e.g., Complaint [#2] at ¶ 29; Second Amended Complaint [#24-2] at ¶ 29. It would take over three years for her to assert that she was owed maintenance on the entire life of the Syngenta deal. See Amended Joint Pretrial Statement [#91] at 8; Testimony of Marjorie Fudali, Oct. 22, 2007 ("I initially thought that it was only first year's maintenance"). The amount owed to the plaintiff was therefore an unliquidated debt. See, e.g., Dist. of Columbia v. Campbell, 580 A.2d 1295, 1300-01 (D.C. 1990) (noting that the fluctuation in damages claimed by plaintiff during the course of the litigation "itself likely would be sufficient grounds for us to conclude that the damages . . . were unliquidated"); Hartford, 441 A.2d at 974 ("[W]e note that the amounts claimed by [the plaintiff] for the unpaid balance of the contract . . . fluctuated throughout the litigation and were thus not liquidated."). Cf. Reiman & Co. v. Eromanga Invs., N.V., 622 F. Supp. 13, 20-21 (D.D.C. 1985) (applying § 15-109, rather than § 15-108, to commission payments).

Because the debt here is unliquidated, the plaintiff's request for pre-judgment interest is governed by § 15-109, which states in relevant part:

> In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff.

D.C. Code § 15-109. Pre-judgment interest is therefore precluded unless "necessary to fully compensate the plaintiff." Id. That determination, however, is explicitly left to the finder of fact, i.e. "the jury, or the court, if the trial be by the court." Id.; see also Dist. Cablevision LP v.

Bassin, 828 A.2d 714, 731 n.24 (D.C. 2003) (statute "authorizes the trier of fact to include interest as an element of damages" if necessary to fully compensate the plaintiff); Noel v. O'Brien, 270 A.2d 350, 351 (D.C. 1970) (statute "allows the fact-finder a wide measure of discretion whether to include" interest). Cf. Bragdon v. Twenty-Five Twelve Assocs. Ltd. P'ship, 856 A.2d 1165, 1173 n.10 (D.C. 2004) (declining to "address [whether] trial court erred in ruling that any claim for prejudgment interest under D.C. Code § 15-109 had to be presented to and awarded by the trier of fact, in this case, the jury.").

In the present case, the plaintiff did not request in her proposed verdict form that the jury make that determination, Verdict Form [#99], and no objection was raised by her to the final verdict form's silence as to pre-judgment interest. Verdict Form [#102]; Transcript, Oct. 24, 2007. Nor did she raise an objection to the jury instructions, which were similarly silent in regard to pre-judgment interest. Jury Instructions [#104]. See also Fed. R. Civ. P. 51(d) (party cannot assign as error a failure to give an instruction unless that instruction was requested by the party).

Consequently, the jury did not "includ[e] interest as an element in the damages awarded [in order] to fully compensate the plaintiff," D.C. Code § 15-109, and it will not be awarded now. See, e.g., Schwartz, 723 A.2d at 844 (affirming trial court's denial of plaintiff's post-trial motion to add pre-judgment interest where motion was denied because the underlying contract "did not provide for prejudgment interest and the issue was not presented to the jury during trial"); Emersons, Ltd. v. Max Wolman Co., 388 F. Supp. 729 (D.D.C. 1975), aff'd 530 F.2d 1093 (D.C. Cir. 1976) ("Clearly, the issue [of pre-judgment interest] was not argued at trial, nor was any evidence submitted on the question. It is therefore inappropriate at this point in time for the Plaintiffs to seek interest in some heretofore unspecified sum. In fairness, the Court will not

allow such interest to be levied . . . except from the date of judgment herein.").

It could be argued that Rule 49(a) of the Federal Rules of Civil Procedure, which permits a court to "make a finding" on an issue of fact that was not submitted to the jury, grants this Court the authority to award pre-judgment interest. Fed. R. Civ. P. 49(a)(3). However, the plain language of § 15-109 says that the issue of pre-judgment interest is for the jury if there is one, and here there plainly was one. See, e.g., Schwartz v. Swartz, 723 A.2d 841, 844 (D.C. 1998) ("Thus, [plaintiff] could have introduced at trial, for the jury's consideration, evidence to show that prejudgment interest was necessary to fully compensate him. He did not. Instead, he presented the issue to the trial judge in a post-trial motion."). Further, even if § 15-109 did not expressly remove the Court's authority to make a finding in the jury's absence, this issue is distinguishable from those discussed previously under Rule 49(a). Specifically, Rule 49(a) only allows the Court to make a finding when certain conditions are met: (1) the issue must be one of fact; (2) must have been "raised by the pleadings or evidence"; and (3) not submitted to the jury. The fact issue presented is whether plaintiff can be fully compensated without pre-judgment interest. See § 15-109. Though the fact that plaintiff would request pre-judgment interest was mentioned in a pre-trial statement [#95], neither she nor defendant presented any evidence before or during the trial having to do with whether plaintiff required interest to be fully compensated. Thus, the issue cannot even be fairly categorized as "raised by the pleadings or evidence." §15-109.

For these reasons, pre-judgment interest will not be awarded. See, e.g., Bucheit v. Palestine Liberation Org., 388 F.3d 346, 352 (D.C. Cir. 2004) (trial judge's denial of pre-judgment interest was not an abuse of discretion where the plaintiff "had offered no evidence to prove that prejudgment interest was necessary to compensate him fully . . . [and] over two days

of trial [had] not only failed to offer any evidence regarding the need for prejudgment interest, he failed to mention the subject at all."); Fed. Mktg. Co. v. Va. Impression Prods. Co., Inc., 823 A.2d 513, 532 (D.C. 2003) (affirming the denial of pre-judgment interest because the "court reasonably could view an award without such interest as sufficient to compensate" the plaintiff).

### IV. Conclusion

In accordance with the jury's verdict, and for the reasons stated above, I find that plaintiff is entitled to be compensated for unpaid commissions in the amount of $1,163,046.01, and unpaid bonuses in the amount of $10,000. Therefore, the clerk is directed to enter a Judgment for the plaintiff in the amount of $1,173,046.01.

Date:   November 10, 2008                           /S/
                                                    JOHN M. FACCIOLA
                                                    U.S. MAGISTRATE JUDGE