**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                              |   |                                 |
|------------------------------|---|---------------------------------|
| **MARJORIE FUDALI,**         | ) |                                 |
|                              | ) |                                 |
| Plaintiff,                   | ) |                                 |
|                              | ) |                                 |
| v.                           | ) | Civil Action No. 03-1460 (JMF)  |
|                              | ) |                                 |
| **PIVOTAL CORPORATION,**     | ) |                                 |
|                              | ) |                                 |
| Defendant.                   | ) |                                 |

## MEMORANDUM OPINION

This case has a long history before me. A jury trial in 2007 rendered a verdict for plaintiff (Docket #102), and a judgment for damages was entered in November 2008. Docket #115. Since that time, there has been an ongoing conflict concerning post-judgment discovery and defendant's ability to satisfy its judgment.[1] Pending before me now are the several motions specified in the footnote and in the attached Order.[2] I will address the motions in turn.

---

[1] The history of this case has been recounted elsewhere. See Fudali v. Pivotal Corp., 623 F. Supp. 2d 25 (D.D.C. 2009); Fudali v. Pivotal Corp., 623 F. Supp. 2d 11 (D.D.C. 2008).

[2] The pending motions are as follows: Plaintiff's Motion for Judgment of Condemnation on Writ of Garnishment of Attachment Against Garnishee Softbrands Manufacturing, Inc. ("Softbrands Mot.") [#165]; Plaintiff's Motion for Judgment of Condemnation on Writ of Garnishment of Attachment Against Garnishee Southern Company Services, Inc. ("Southern Mot.") [#166]; defendant Pivotal's Motion to Quash Subpoenas with Incorporated Statement of Points and Authorities ("Mot. to Quash") [#181]; Judgment Plaintiff's Renewed Motion to Hold Defendant in Contempt, for Sanctions and for Evidentiary Hearing on Same [#182]; defendant Pivotal's Motion for Protective Order and for Judicial Supervision of Post-Judgment Collection Efforts with Incorporated Statement of Points and Authorities ("Mot. Prot. Order") [#193]; Plaintiff Marjorie Fudali's Petition for Attorney's Fees and Incorporated Memorandum of Law in Support Thereof [#225]; plaintiff's Motion for Contempt and Sanctions Relating to Defendant's Failure to Produce Derrick Anderson for Deposition and Respond to Plaintiff's Second Set of Post Judgment Interrogatories and Request for Production of Documents and Incorporated Memorandum of Points and Authorities in Support Thereof [#227]; and defendant Pivotal's Motion to Reconsider Order on Motion to Compel ("Mot. to Reconsider") [#228].

## I. MOTIONS

### A. Plaintiff's Motions for Judgment

Plaintiff served writs of garnishment upon Softbrands Manufacturing, Inc. ("Softbrands") and Southern Company Services, Inc. ("Southern"), claiming in each motion that each company had funds "owed to defendant Pivotal Corporation." Softbrands Mot. at 1; Southern Mot. at 1. In their respective Interrogatories in Attachment, both Softbrands and Southern admitted to owing money to defendant, identified in the interrogatories as Pivotal Corporation. Softbrands Mot. at Exh. 1; Southern Mot. at Exh. 1.

In response, defendant claims that there are two companies bearing the name "Pivotal Corporation"–one in Washington state, and the other in Canada, the former being the defendant in this case. Combined Opposition to Motions for Judgment of Condemnation on Writs of Garnishment of Attachment [#186] at 1-2. Defendant attaches the declaration of Gregor Morela, who states that he is the president of Pivotal Corporation in Washington state, and that neither garnishee owes any funds to "Pivotal Corporation (Washington State)." Id. at Morela Dec. ¶¶ 3-5. If that is the case, then Pivotal Corporation of Washington state, identifying itself to be the defendant herein, is not making any claim to the property attached (*i.e.*, the money owned by the garnishees), and it lacks standing to challenge the garnishment. D.C. Code § 16-551;[3] Visions Found., Inc. v. Falcon Color, Inc., 606 A.2d 1027, 1028 (D.C. 1992).

Accordingly, both Plaintiff's Motion for Judgment of Condemnation on Writ of Garnishment of Attachment Against Garnishee Softbrands Manufacturing, Inc. [#165] and

---

[3] All references to United States or District of Columbia Codes herein are to the electronic versions in Westlaw or Lexis.

Plaintiff's Motion for Judgment of Condemnation on Writ of Garnishment of Attachment Against Garnishee Southern Company Services, Inc. [#166] will be granted. Furthermore, defendant's Combined Opposition to Motions for Judgment of Condemnation on Writs of Garnishment of Attachment [#186] will be stricken, and the Clerk shall enter judgment in favor of plaintiff against Softbrands in the amount of $9,312, and against Southern in the amount of $15,592.50.

**B.     Motion to Quash Subpoena**

Defendant filed a motion to quash subpoenas served upon two law firms with which defendant's counsel has been affiliated, Dorsey & Whitney LLP and Greenberg Taurig LLP. Mot. to Quash at 1. By those subpoenas, plaintiff sought the following:

1. Invoices sent to Pivotal Corporation or any entity acting on behalf of Pivotal Corporation for Fudali v. Pivotal Corp., Case No. 1:03-cv-1460 (JMF), U.S. District Court for the District of Columbia.

2. Copies of all payments from Pivotal Corporation or on behalf of Pivotal Corporation for Fudali v. Pivotal Corp., Case No. 1:03-cv-1460 (JMF).

3. Documents relating to addressees to whom bills for Fudali v. Pivotal Corp., Case No. 1:03-cv-1460 (JMF) were sent.

4. Insurance policies related to payment responsibility for Fudali v. Pivotal Corp., Case No. 1:03-cv-1460 (JMF).

Plaintiff's Opposition to Defendant's Motion to Quash Subpoenas ("Opp. to Mot. to Quash") [#192] at Exh. 2.

Pivotal Corporation purports to move to quash this subpoena, despite the fact that they were served upon the law firms. However, only the party upon whom the subpoena is served and who must comply may be heard to move to quash it. Amobi v. Dist. of Columbia Dept. of Corrs.,

3

257 F.R.D. 8, 9-10 (D.D.C. 2009) (quoting Novak v. Capital Mgmt. & Dev. Corp., 241 F.R.D. 389, 394 (D.D.C. 2007)). While, as indicated by Novak, a party to a lawsuit may have standing to quash a subpoena where that subpoena infringes on the moving party's rights, there is no such infringement here. The attorney-client privilege protects confidential communications between a client and attorney that are made for the purpose of securing legal services or legal advice. See Ventro v. IRS, 714 F. Supp. 2d 137, 151 (D.D.C. 2010). The work product privilege, on the other hand, protects "documents . . . that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). Invoices, payments, addresses, and insurance policies[4] hardly threaten the disclosure of any documents that are protected under either of these privileges. Moreover, in the unlikely event that the invoices disclose either confidential communications or work product, that specific information may be excised. Plaintiff wants to know who received and who paid the bills; she does not care about the services rendered.

Thus, Pivotal's Motion to Quash Subpoenas with Incorporated Statement of Points and Authorities [#181] will be denied.

**C.    Plaintiff's Renewed Motion to Hold Defendant in Contempt, for Sanctions, and for an Evidentiary Hearing**

Under Federal Rule of Civil Procedure 37(b)(2)(vii), the court may consider as contempt of court the failure to obey any order. Fed. R. Civ. P. 37(b)(2)(vii). It must be recalled, however, that "civil sanctions may not be punitive–they must be calibrated to coerce compliance or compensate a complainant for losses sustained." In re Fannie Mae Sec. Litig., 552 F.3d 814, 823 (D.C. Cir. 2009). As plaintiff is not seeking to coerce compliance, but is claiming that she was

---

[4] Insurance policies should have been disclosed in Pivotal's initial disclosures. Fed. R. Civ. P. 26(a)(1)(iv).

misled by responses given by Pivotal, contempt can only compensate her for the losses she sustained. Thus, the only remedy available is the one already specified in Federal Rule of Civil Procedure 37(b)(2)(C), *i.e.*, the payment of her expenses caused by the alleged failure to comply with the order. Fed. R. Civ. P. 37(b)(2)(C).

Unfortunately, plaintiff does not speak to this rule, nor does she specify what expenses (if any) were "caused . . . by the failure to comply" with the July order. Id. Accordingly, Judgment Plaintiff's Renewed Motion to Hold Defendant in Contempt, for Sanctions and for Evidentiary Hearing on Same [#182] will be denied.

**D.  Pivotal's Motion for Protective Order and for Judicial Supervision of Post-Judgment Collection Efforts**

Protesting that it "does not have funds to pay the judgment" in this action, Pivotal seeks a protective order against plaintiff's requesting additional discovery or issuing writs of attachment on judgment to third parties without first making a request upon the Court. Mot. Prot. Order at 1-2.

As to the latter, I have already determined above that Pivotal lacks standing to challenge writs of attachment on third parties. There will be time enough to assess the legitimacy of such writs when the parties upon whom they are served speak to that issue. Until then, I will not permit Pivotal, by seeking a protective order, to do indirectly what it cannot do directly.

As to plaintiff's requesting additional discovery, Pivotal points to a statement by plaintiff's counsel during a deposition that the aim of plaintiff's present discovery efforts is to sue another entity. Mot. Prot. Order at 5. Pivotal insists that this is not a permissible goal of post-judgment discovery. Id.

Plaintiff has not seen a penny of the judgment entered, from which Pivotal did not appeal. Furthermore, there is distressing testimony from the purported president of Pivotal, Gregor Morela, that implies that Pivotal does not consider that judgment valid, as Pivotal issued a public report indicating that it had accrued an amount of potential liability that was less than the judgment rendered. See Plaintiff's Reply to Judgment Debtor's Opposition to Renewed Motion to Hold Defendant in Contempt, for Sanctions, and for Evidentiary Hearing on Same [#206] at Exh. A at 118-20. There is no explanation of why Pivotal may consider this Court's judgment invalid, nor why it carried on its books an amount of liability less than the judgment rendered. This arrogant attitude concerns me greatly.

In addition, Plaintiff points to the movement of assets from Pivotal to other entities between the verdict and the rendering of judgment. See Plaintiff's Opposition to Defendant's Motion for Protective Order and for Judicial Supervision of Post-Judgment Collection Efforts [#210] at 3. Furthermore, Pivotal's corporate representative, Daniel Scott Edison, testified that Pivotal is owed large amounts of money by affiliated and other entities. Opp. to Mot. to Quash at 7-8. In Morela's deposition testimony, however, Pivotal appears to be an empty shell with no assets or remaining corporate structure. Id. at 7.

The multitude of questions raised by this deposition testimony certainly justifies broad discovery into the movement of money from Pivotal to other entities, and how it came about that Pivotal is supposedly incapable of paying the judgment. As plaintiff points out, the federal courts have permitted such discovery when reasonable doubt is raised about the legitimacy of transfers that may have been made to defeat a judgment creditor. See, e.g., Falicia v. Advanced Tenant Svcs., Inc., 235 F.R.D. 5, 7-8 (D.D.C. 2006), and cases cited therein. Accord Internet

Direct Response Inc. v. Buckley, No. SACV 09-001335, 2010 WL 1752181 at *2 (C.D. Cal. April 29, 2010). Surely, there is enough here to justify the inquiry that plaintiff must make to probe all of the transfers Pivotal has made since the verdict was rendered, and then after judgment was entered.

That this discovery may lead to plaintiff's suing a third party to pursue those transfers does not render the discovery improper; again, as plaintiff points out, the converse is true. Discovery attempting to ascertain whether Pivotal has an alter ego concerning its assets, and whether it transferred its assets to that alter ego to defeat execution of the judgment, is perfectly proper. See First City, Texas-Houston, N.A. v. Rafidain Bank, 281 F.3d 48, 54 (2d Cir. 2002); see also Abu-Nassar v. Elders Futures, Inc., No. 88 Civ. 7906, 1991 WL 45062 at *16 (S.D.N.Y. March 28, 1991).

Thus, Pivotal's Motion for Protective Order and for Judicial Supervision of Post-Judgment Collection Efforts with Incorporated Statement of Points and Authorities [#193] will be denied.

**E.     Pivotal's Motion to Reconsider and Plaintiff's Motions for Attorney's Fees and Sanctions**

On October 12, 2010, when I saw that no opposition had been filed, I granted Plaintiff Fudali's Motion to Compel Defendant Pivotal Corporation to Respond to Post-Judgment Discovery Requests, Deposition of Derrick Anderson, for Sanctions and Request for Expedited Oral Hearing [#202].[5]

Pivotal's theory is that it made clear in writing to plaintiff's counsel that it was declining

---

[5] Simultaneously, I granted two other motions that were also unopposed, but Pivotal's Motion to Reconsider concerns only the indicated motion to compel.

to proceed with any discovery until I acted on its motion for a protective order, filed in April (of which I dispose in the accompanying Order). Mot. to Reconsider at 2. As Pivotal filed its motion for a protective order and announced that it was not going to engage in discovery before plaintiff filed its motion to compel, I am said to have erred in granting plaintiff's motion as unopposed. Id. at 3.

Defendant refers to Federal Rule of Civil Procedure 26(c), claiming that defendant's position, *i.e.*, "awaiting ruling on its motion for a protective order, then . . . respond[ing] to the discovery as appropriate based on the Court's ruling," is the "procedure contemplated" by the Federal Rule. Mot. to Reconsider at 2. Defendant claims that a party seeking a protective order under the Federal Rule should neither be required to face a motion to compel while awaiting a ruling on its motion, nor to "incur the cost and expense of further briefing of a motion to compel."[6] Id. at 3-4. To do otherwise, defendant asserts, "undermines the procedure contemplated by the rules." Id. at 4.

I am aware, however, of no authority in the Federal Rules of Civil Procedure or in our Local Rules that grants a party liberty from filing an opposition to a motion because it has filed an earlier protective order. Defendant fails to cite any case law supporting this interpretation of Rule 26, or to the language of the rule itself. That is because there is no language in the Federal Rule that would support defendant's interpretation. Furthermore, the Local Rules unequivocally state that, if an opposing memorandum is not filed within the required time, "the Court may treat the motion as conceded." LCvR 7(b).

---

[6] Incidentally, had defendant filed an opposition with the Court stating essentially what was represented to plaintiff concerning its position (Mot. to Reconsider at 2), that would have satisfied its obligation to respond.

8

On October 12, 2010, the docket reflected three unopposed motions, and I resolved them simultaneously because they were, in fact, unopposed. The Local Rules unquestionably grant me that authority, and warn counsel of the consequence of their failing to file an opposition. I hardly "erred" by exercising the authority unequivocally granted me by the Local Rules.

I will not, therefore, reconsider my granting of plaintiff's motion to compel; Pivotal's Motion to Reconsider Order on Motion to Compel [#228] will be denied. In my discretion, however, Plaintiff Marjorie Fudali's Petition for Attorney's Fees and Incorporated Memorandum of Law in Support Thereof [#225] and plaintiff's Motion for Contempt and Sanctions Relating to Defendant's Failure to Produce Derrick Anderson for Deposition and Respond to Plaintiff's Second Set of Post Judgment Interrogatories and Request for Production of Documents and Incorporated Memorandum of Points and Authorities in Support Thereof [#227] will also be denied. Instead, Pivotal will be ordered to comply with my order of October 12, 2010 granting plaintiff's motion to compel by December 14, 2010, including making Derrick Anderson available for deposition.

Furthermore, as plaintiff prevailed on her motion to compel [#202], I will, in accordance with Federal Rule of Civil Procedure 37(a)(5)(A), consider whether I should require defendant to pay plaintiff's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A). Per the rule, I will give defendant an opportunity to be heard on this matter by showing cause in writing by December 10, 2010 why I should not award plaintiff this relief. Id. See Fed. R. Civ. P. 37, Advisory Committee note to 1993 amendment (opportunity to be heard in this rule includes written submission).

## III. CONCLUSION

A separate Order accompanies this Memorandum Opinion.

---
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE