UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                          |   |                                |
|--------------------------|---|--------------------------------|
| **MARJORIE FUDALI,**     | ) |                                |
|                          | ) |                                |
| Plaintiff,               | ) |                                |
|                          | ) |                                |
| v.                       | ) | Civil Action No. 03-1460 (JMF) |
|                          | ) |                                |
| **PIVOTAL CORPORATION,** | ) |                                |
|                          | ) |                                |
| Defendant.               | ) |                                |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

Plaintiff, Marjorie Fudali, ("Fudali"), secured a judgment against Pivotal Corporation ("Pivotal") in 2008. Fudali v. Pivotal Corp., 623 F. Supp. 2d 11 (D.D.C. 2008). She has spent the two and a half years since that time trying to collect it.[1] She has now added a third party—CDC Software, Inc. ("CDC")—and on September 2, 2010, filed Plaintiff's Supplemental Proceeding to Recover Fraudulent Conveyances by Defendant/Judgment Debtor Pivotal Corporation to CDC Software, Inc. [Doc. #222].[2] Additionally, she seeks the appointment of a receiver "to independently gather the assets of Defendant Pivotal Corporation." Plaintiff's Motion to Appoint a Receiver Over the Assets of Defendant Pivotal Corporation and

---

[1] Her efforts have generated many controversies that I have had to resolve. See Fudali v. Pivotal Corp., Civil Action No. 03-1460, 2011 WL 122053 (D.D.C. Jan. 14, 2011); Fudali v. Pivotal Corp., Civil Action No. 03-1460, 2010 WL 4910263 (D.D.C. Dec. 2, 2010).

[2] Plaintiff filed this document as a motion, to which defendant failed to file any opposition; thus, I granted her motion in a Minute Order issued October 12, 2010. See Minute Order (2) of Oct. 12, 2010. Plaintiff also filed a Motion for Summons for CDC Software, Inc. in Supplemental Proceeding to Recover Fraudulent Conveyances Made by Defendant/Judgment Debtor Pivotal Corporation to CDC Software, Inc. [Doc. #223], to which no opposition was filed, and which I also granted on October 12, 2010. See Minute Order (3) of Oct. 12, 2010.

Incorporated Statement of Points and Authorities in Support Thereof [Doc. #241] at 9.

Fudali states that CDC (to which she refers as "CDCSINC") is a Georgia corporation which has its principal business in Atlanta, Georgia. #222, ¶ 4.[3] She alleges that, soon after the judgment was entered in this case, "all control of the operations and finances of Defendant Pivotal Corporation was transferred to CDCSINC." Id. ¶ 7. She also alleges that "the corporate officers of Defendant Pivotal were also management of CDCSINC and were controlled by corporate officers and management of CDCSINC." Id.

According to Fudali, within weeks of the judgment entered in this case, "Pivotal went from an operation with millions of dollars running through its bank accounts and multiple employees, to a shift of its bank accounts, all employees and other financial operations to CDC Software, Inc." Plaintiff's Reply to Defendant's Opposition to Motion to Appoint a Receiver [Doc. #258] at 3.

Fudali contends that these transactions were made with the intent to deceive:

> Pivotal and its related companies are engaging in an elaborate asset protection scheme to avoid Plaintiff Fudali's Judgment and likely other creditors. Since shortly after the Judgment was awarded, Defendant has been a mere shell of company that does not control its own operations, including the legal defense in the case. Pivotal's bank accounts were closed and shifted over to CDCSIN as was the payroll of Pivotal's employees. *See* 10/15/2010 Deposition of Bryan Sell as corporate designee of CDCSINC and CDC Corporation (Exhibit 2) at 30; Morela Dep. at 82-83. All monies earned by Pivotal and other related entities are sourced to CDCSINC bank accounts and commingled for disbursement controlled by CDCSINC. Sell Dep. (Ex. 2) at 31-34.

# 258 at 3 (footnote omitted).

---

[3] All filed documents, having been identified by their actual title, will thereafter be referred to by document number.

In her supplemental proceeding, Fudali identifies eight transfers of funds made by Pivotal in late 2008 and early 2009 to accounts controlled by CDC. #222 at ¶ 9. She alleges that these transfers were made with the intent to defraud her, a judgment creditor. Id. ¶¶ 10-12. She asks that the court order that the transfers made by Pivotal to CDC be avoided and disgorged to satisfy her claims, and that judgment be entered against the defendants for the amounts transferred. Id. at 5.

For its part, Pivotal insists that Fudali cannot show that the structure and operation of Pivotal has changed at all since the time of her employment. Opposition to Motion to Appoint Receiver [Doc. #252] at 1. Pivotal explains that it has only ever had one customer, a parent corporation also called Pivotal Corporation, which is based in British Columbia ("Pivotal BC"). Id. Indeed, the very contract at issue in this case was a contract between a customer, Syngenta, and an Irish company, Pivotal Technologies Corporation Limited. Id. at 3. Pivotal explains that "plaintiff, as an employee of Pivotal US, provided services under the Services Agreement with Pivotal Canada [*i.e.*, Pivotal BC], to secure a contract for another Pivotal entity, as part of Pivotal US's performance of the Services Agreement." Id. Pivotal insists that the only assets it has are intangibles, and that its "debts" are nothing more than intercompany balances between Pivotal and other affiliated entities. Id. at 5-7. According to Pivotal, nothing has changed, no "assets" have been moved, and there is no warrant whatsoever for the appointment of a receiver.

CDC, as the new third-party defendant, has moved to dismiss plaintiff's supplemental proceeding, on the grounds that the Court lacks jurisdiction both over its subject matter and over the person of CDC. See Third-Party Defendant CDC Software, Inc.'s Motion to Dismiss Supplemental Proceeding [Doc. #235] at 1.

I conclude that the Court has jurisdiction over the subject matter, but the contention that the Court lacks jurisdiction over the person of the third-party defendant—and, in turn, as to whether the Court should appoint a receiver—raises genuine issues of fact as to what has occurred since judgment was rendered, which I believe can only be resolved after an evidentiary hearing.

## II.  JURISDICTION

### A.  Subject Matter Jurisdiction and a Cognizable Claim

Pivotal first argues that the Court lacks jurisdiction over the subject matter of any claim against CDC, because the nature of such a claim is greater than the "proceedings supplementary to and in aid of judgment or execution" that are described in Rule 69(a)(1) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 69(a)(1).  But, Rule 69 neither grants nor deprives a federal court of jurisdiction over the subject matter of a claim for relief.  It simply states that the procedure on execution of a judgment, and in proceedings supplementary to and in aid of judgment or execution of the judgment, must be in accord with the procedure of the state where the court is located, unless a federal statute applies. Id.

Pivotal ignores that the District of Columbia adopted the Uniform Fraudulent Transfer Act in 1996, which creates a cause of action for a creditor to set aside a fraudulent conveyance. See Unif. Fraudulent Transfer Act § 7 (1984); D.C. Code § 28-3107.  Furthermore, "[i]f a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." D.C. Code § 28-3107(b).  Thus, Fudali, no matter how she may phrase it, states a claim upon which relief can be granted on the basis of that statute.

4

Moreover, there is no question that Fudali, now apparently a citizen of California, is diverse in citizenship from Pivotal and CDC, neither of whom is incorporated in California nor has its principal place of business there, nor is there any question that the claim she asserts exceeds $75,000 in value. See 28 U.S.C. § 1332. It must be recalled that the issue of whether a district court can assert ancillary jurisdiction over a claim for relief arises only when the court does not otherwise have jurisdiction over the claim. Accordingly, she is asserting a claim for relief over which this Court unquestionably has subject matter jurisdiction based on diversity of citizenship. See generally 28 U.S.C. § 1332.

**B.     Personal Jurisdiction Over CDC Software, Inc.**

Less clear is whether the Court has personal jurisdiction over CDC such that plaintiff can maintain her supplemental proceeding. I will approach this question through two potential sources of personal jurisdiction. In the first, this Court's ability to assert jurisdiction over the person of a foreign corporation is found in the District of Columbia "long-arm" statute, to which I will turn in a moment. Independent of that source of authority is the Court's power to exercise jurisdiction over the person of a foreign corporation when it is the "alter ego" of a domestic corporation. If this theory applies, then it will not matter whether any of the bases of the long arm statute apply to the foreign corporation.

   *1.     The Long-Arm Statute*

In order for this Court to exercise personal jurisdiction over a non-resident defendant, the Court must first determine whether such jurisdiction is authorized by the District of Columbia's long-arm statute, and then whether the exercise of such jurisdiction satisfies due process requirements. In re Fort Totten Metrorail Cases, ___ F. Supp. 2d ___, Case No. 10-MC-314,

2010 WL 5263229, at *2-5 (D.D.C. Dec. 23, 2010).

In a recent opinion, Judge Kollar-Kotelly explained the pertinent procedural and evidentiary principles that apply to the Court's consideration of a motion to dismiss for lack of jurisdiction over the person:

> A plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. See Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990). "The plaintiff, however, cannot rest on bare allegations or conclusory statements and must allege specific facts connecting each defendant with the forum." GTE New Media Servs., Inc. v. Ameritech Corp., 21 F. Supp. 2d 27, 36 (D.D.C. 1998); see also Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C.Cir. 2001) (same). "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather she may rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as [she] can otherwise obtain.'" Urban Inst. v. FINCON Servs., 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting Mwani v. bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005)) (alteration in original). When determining whether personal jurisdiction exists over a defendant, the Court need not treat all of a plaintiff's allegations as true. Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." United States v. Philip Morris, Inc., 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (internal quotation marks and citation omitted). Any factual discrepancies with regard to the existence of personal jurisdiction, however, must be resolved in favor of the plaintiff. See Crane, 894 F.2d at 456.

IMark Marketing Servs., LLC v. Geoplast, __ F. Supp. 2d __, Civil Action No. 10-347, 2010 WL 4925293, at *3 (D.D.C. Dec. 6, 2010).

Additionally, in In re Baan Co. Securities Litigation, 245 F.Supp.2d 117 (D.D.C. 2003), Judge Huvelle marshaled substantial authority for her conclusion that, once a court has permitted discovery pertaining to jurisdiction, the court must accept as true allegations made as

6

to jurisdiction by the plaintiff that are supported by "concrete evidence." Id. at 124-26.

The District of Columbia long arm statute provides, in pertinent part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --
>
> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]

D.C. Code § 13-423.

As to the doing of an act, plaintiff claims that CDC caused its management to serve as officers of Pivotal, and caused Pivotal on eight occasions to make fraudulent conveyances to itself. #222 at ¶¶ 7-9. Under that theory, CDC, directly and through its agents functioning as Pivotal's management, transferred the money from Pivotal to CDC "with the actual intent to delay, defraud and hinder creditors, such as Plaintiff Fudali." Id. at ¶ 12. Plaintiff also claims that this transfer took place only after "all control of the operations and finances of Defendant Pivotal Corporation were transferred to CDCINC." Id. at ¶ 7. Therefore, she sufficiently alleges the doing of act that was a crucial, necessary part of committing the tort of fraudulent transfer of its assets with the intent to defeat her judgment claim against it.

7

The problem, however, is whether these transfers were acts that were done in the District of Columbia and that caused an injury in the District of Columbia. All we know is that, according to Fudali's allegations, the transfers took place; according to Pivotal, one can infer that they happened in Georgia and, if they caused harm to Fudali, did so in California, where she may now live. #235 at 5-6.

But the crucial determination of whether the conveyances caused harm in the District of Columbia by an act done in the District of Columbia cannot be permitted to rest either on plaintiff's allegations or the inferences Pivotal would draw from those allegations. As such, a hearing is required for each party to present evidence as to where both the act took place, and where the resultant harm occurred.

### 2. *Alter Ego*

The District of Columbia courts accept the principle that where one entity is the alter ego of another, their acts are legitimately deemed to be, in effect, the acts of a single entity. See Jackson v. Loews Wash. Cinemas, Inc., 944 A.2d 1088, 1095-96 (D.C. 2008). It then follows that, if the court has jurisdiction over the person of one such entity, it may legitimately assert jurisdiction over the person of the other, although the latter may neither be incorporated in the District of Columbia nor doing business here. IMark, 2010 WL 4925293 at *5; Roz Trading Ltd. v. Zeromax, 517 F. Supp 2d 377, 383 (D.D.C. 2007); Kroger v. LegalBill Com., LLC, No. CIV A 04-2189, 2005 WL 4908968, at *11 (D.D.C. 2005); United States v. Smithfield Foods, Inc., 332 F. Supp. 2d 55, 61 (D.D.C. 2004); Gonzalez v. Internacional de Elevadores, 891 A.2d 227, 237 (D.C. 2006).

This is but another way of saying that, if the evidence requires it, the court will pierce the

8

corporate veil if the entities involved have not in fact created, acknowledged, and maintained the separate identity of the first corporation from either another corporation or an individual. Raleigh v. Mitchell, 947 A.2d 464, 471 (D.C. 2008); Jackson, 944 A.2d at 1095.

The D.C. Circuit has established a two-prong test to determine whether the court should pierce the corporate veil (also known as the "Labadie test"):

> A plaintiff must show by affirmative evidence that two elements have been satisfied:
>
> (1) Is there such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist?; and
>
> (2) if the acts are treated as those of the corporation alone, will an inequitable result follow?

Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr. Ltd. P'ship, 90 F. Supp. 2d 15, 23 (D.D.C. 2000) (citing Labadie Coal Co. v. Black, 672 F.2d 92, 97 (D.C. Cir. 1982)).

Unity of interest and ownership can be shown, for example, by demonstrating that a corporation is dominated and controlled by another corporation. Id. (citing Vuitch v. Furr, 482 A.2d 811, 815-16 (D.C. 1984)). Also relevant to the first factor in the Labadie test is the degree to which separate corporate formalities have been followed. Id. In making this assessment, a court should consider:

> 1) the nature of the corporate ownership and control;
>
> 2) failure to maintain corporate minutes;
>
> 3) substantial disregard of the formalities of the corporate form;
>
> 4) commingling of funds and other assets of the corporation;
>
> 5) diversion of the corporation's funds and other assets to noncorporate uses such as the personal use of the corporations's

9

shareholders; and

6) use of the same office or business location by the corporation and its individual shareholders.

Id. (citing Labadie, 672 F.2d at 97). See also Jackson, 944 A.2d at 1095-96; Gonzalez, 891 A.2d at 237.

Moreover, the piercing of a corporate veil also requires consideration of whether it will cause an inequitable result. See Labadie, 672 F.2d at 97. If the conveyances at issue were in fact done to defeat the execution of the judgment, Pivotal and CDC are hardly victimized by an injustice. To the contrary, if Fudali can prove her case, she will have established that she was victimized by fraudulent conveyances designed to defeat the judgment she secured, which can only be remedied by the Court asserting jurisdiction over CDC. A party cannot manipulate another party within a forum, and expect not to be haled before the court in that forum to defend its actions.[4]

As discussed above, Fudali alleges that Pivotal has failed to observe corporate formalities since 2007. #222 at ¶ 8. She points to evidence that she has gathered showing that Gregory Morela is simultaneously the President of Pivotal and CDC as well as the Chief Accounting Officer for another CDC entity, CDC Corporation. #238 at 5-6. Morela has never been paid for his services by Pivotal; he is paid for both his services to Pivotal and his services for CDC Corporation by CDC Software, Inc. Id. at 6. Indeed, there are overlapping officers between Pivotal, CDC Software, Inc., and CDC Corporation. Id. Morela cannot recall any corporate

---

[4] The exercise of *in personam* jurisdiction requires consideration as to whether it will "offend 'traditional notions of fair play and substantial justice' as required by the Constitution's guarantee of due process." IMark, 2010 WL 4925293 at *11 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

meeting of Pivotal, and the corporate secretary of Pivotal is Derrick Anderson, who is compensated not by Pivotal, but by CDC Corporation. Id. There is no written agreement providing for CDC Software, Inc. to handle the operations of Pivotal. Id. Pivotal is based in an office in Atlanta, but has no lease. Id. CDC Software, Inc. controls all of Pivotal's finances, and in early 2009, all of Pivotal's bank accounts were transferred to CDC Software, Inc. Id. at 6-7. As of 2009, all of Pivotal's employees have become employees of CDC Software, Inc. Id. at 6. CDC Software, Inc. is a wholly owned subsidiary of CDC Corporation, and the latter lists a judgment to Fudali in the amount of $750,000 (not the actual judgment) in its filings with the Securities and Exchange Commission. Id. at 7.

If credited, Fudali's allegations of the unity between Pivotal and CDC, supported by the evidence she has marshaled, are sufficient to establish that one is the alter ego of the other; as such, the Court could exercise jurisdiction over both companies to litigate the factual dispute as to (1) what has happened since judgment was rendered and (2) whether the transfers between the two entities are legitimate or fraudulent conveyances. That said, Pivotal provides its explanation for all of these events, primarily insisting that the relationship between itself and these other entities has always been the same as it was when Fudali worked for Pivotal. #252 at 3. It also insists that the developments since the judgment are not nefarious, but the continuation of an honest relationship between one corporation and another, its wholly owned subsidiary, so that transfers of assets between them are nothing more than ordinary accounting procedures. #252, *passim.*

In asking the Court to accept its contentions, Pivotal is demanding that Fudali prove her case that the transfers between CDC and itself are fraudulent as a condition of the Court asserting

jurisdiction over the person of the third-party defendant. It cannot do that. As I explained in Miller v. Holzmann, Civil Action No. 95-1231, 2007 WL 39371 (D.D.C. Jan. 8, 2007):

> In In re Baan Co. Sec. Litig., 245 F. Supp. 2d 117, 124-26 (D.D.C. 2003), Judge Huvelle marshaled substantial authority for her conclusion that, once a court has permitted discovery pertaining to jurisdiction, the court must accept as true allegations made as to jurisdiction by the plaintiff that are supported by "concrete evidence." Thus, the court may not resolve factual issues that have arisen during jurisdictional discovery, lest it usurp the jury's function or require the plaintiff to prove her case as a condition of proceeding with general discovery. Rather, once plaintiff supports her allegations regarding jurisdiction over the defendant's person with evidence, the motion to dismiss for lack of jurisdiction must be denied even though the parties are bitterly divided on the truth of those allegations and their division creates a genuine issue of material fact.

Id. at *6. Accord: IMark, 2010 WL 4925293 at *3 ("Any factual discrepancies with regard to the existence of personal jurisdiction, however, must be resolved in favor of the plaintiff.").

We shall proceed as follows. At an evidentiary hearing, Fudali will be permitted to attempt to establish that the conveyances at issue met the requirement of the long arm statute, such that it can be said that CDC performed an act in the District of Columbia that caused an injury in the District of Columbia. At the same evidentiary hearing, Fudali will be permitted to attempt to establish that, in the alternative, Pivotal and CDC are alter egos of one another, and the Court's jurisdiction over Pivotal may extend over CDC as the same company.

## III.   THE APPOINTMENT OF A RECEIVER IS PREMATURE

With the jurisdictional questions resolved, this Court may proceed to adjudicate the claim raised that the specified conveyances were fraudulent. Resolution of that issue may moot the appointment of a receiver if Fudali prevails. If she does establish that the conveyances were

fraudulent, the Court may be able to set them aside and order them restored to Pivotal, then deposited in the registry of the Court so that the judgment can be satisfied. If, on the other hand, Fudali fails, she may still be able to articulate reasons for the appointment of a receiver that are supported by other evidence. In either event, the question of appointing a receiver should await the conclusion of the hearing. Fudali's motion for the appointment of a receiver will be denied without prejudice.

## IV.  PREPARATION FOR THE HEARING

The evidentiary hearing will consider two questions: first, under the theory that jurisdiction must be established under the District of Columbia long-arm statute, plaintiff will have to show 1) that an act took place in the District of Columbia that caused harm in the District of Columbia, or 2) that there exists an alternate source of jurisdiction under the alter ego theory.

To prepare for that hearing, counsel for the parties shall do the following:

1. They shall meet and confer and, in consultation with my chambers by telephone conference on May 2, 2011 at 10:00 A.M., find a date for the hearing.

2. Two weeks before the hearing, counsel will exchange proposed exhibits to include deposition transcripts. Counsel shall eliminate duplicates by denominating any exhibit they both intend to introduce as a joint exhibit.

3. One week after the exchange, counsel will jointly file a Praecipe indicating any exhibit to which he or she will object. The exhibit will be identified by a number and the nature of the objection set forth. Any exhibit to which no objection is made at that time will be admitted into evidence.

4. Two weeks before the hearing, counsel will exchange a list of witnesses with an indication of the expected length of the witness's testimony.

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE